IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

Dawn H.,[1]

        Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

        Defendant.

Case No. 3:19-cv-00113-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiff Dawn H. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

## BACKGROUND

On March 15, 2013, plaintiff protectively filed for a period of DIB, alleging disability beginning June 20, 2010, with a date last insured of March 1, 2015. In her applications, plaintiff alleged disability due to a combination of physical and mental impairments, including "diabetes, mellitus, fibromyalgia, sleep apnea, chronic obstructive pulmonary disease, obesity, congestive heart failure, coronary artery disease, degenerative disc disease, major depressive disorder, and an anxiety disorder." Tr. 20.

Plaintiff's claims were denied initially on September 17, 2013, and upon reconsideration on May 20, 2014. On September 30, 2014, plaintiff filed a written request for hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on June 19, 2015, where plaintiff was represented by counsel. Plaintiff and a vocational expert ("VE") offered testimony at the hearing. On September 24, 2015, the ALJ issued a partially favorable decision. The ALJ found that plaintiff was not disabled prior to March 1, 2015, but became disabled on that date and through September 24, 2015, the date of the ALJ's decision. On February 24, 2016, the Appeals Council initially denied review. But on July 1, 2016, after considering new evidence upon plaintiff's request— a completed questionnaire from plaintiff's treating physician, Dr. Robert Bergstrom, M.D., detailing his explanations for plaintiff's limitations—the Appeals Council again denied plaintiff's request for

review. Plaintiff then filed a complaint in the District of Oregon. On July 24, 2017, this Court adopted Magistrate Judge Clarke's F&R in 3:16-cr-01749-CL reversing the ALJ's decision and remanding the case for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Among other instructions, the Order stated that on remand, the ALJ should "[a]ccess the medical opinions of Dr. Bergstrom" and provide sufficient reasons for rejecting his opinions, if the ALJ decided to do so. Tr. 677. On December 16, 2017, consistent with this Court's remand order, the Appeals Council vacated the final decision of the Commissioner and remanded for further administrative proceedings. In doing so, the Appeals Council required the ALJ to "offer the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision for the period prior to March 1, 2015, the day [plaintiff was] found disabled." Tr. 647.

On August 7, 2018, the ALJ conducted a second hearing, where plaintiff was represented by counsel, and plaintiff and a VE offered testimony. On September 26, 2018, the ALJ issued a second decision findings that plaintiff was not disabled prior to September 26, 2013 but became disabled on that date and through the date of the ALJ's second decision. Plaintiff subsequently filed the present complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial

evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The court must evaluate the complete record and weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet that burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of June 20, 2010, through the date last insured of March 1, 2015. Tr. 558; *see also* 20 C.F.R. §

416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments since the alleged onset date: "diabetes, mellitus, fibromyalgia, sleep apnea, chronic obstructive pulmonary disease, obesity, congestive heart failure, coronary artery disease, degenerative disc disease, major depressive disorder, and an anxiety disorder." Tr. 558-59; *see also* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 559; *see also* 20 C.F.R. § 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). Tr. 560-67; *see also* 20 C.F.R. § 416.920(e). The ALJ found that, through the date last insured, plaintiff "had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a)" with the following additional limitations. Tr. 560. Plaintiff "could no more than occasionally stoop, crouch, crawl, kneel, balance or climb ramps and stairs . . . [but] could never climb ropes, ladders or scaffolds." *Id.* She "must also avoid exposure to dust, fumes, gases, poor ventilation and other noxious odors, as well as unprotected heights, moving machinery and similar hazards." *Id.* Finally, plaintiff "could have no public contact, and could have no more than brief, superficial contact with co-workers." *Id.*

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work." Tr. 567; *see also* 20 C.F.R. § 404.1565. But at step five, the ALJ found that "[p]rior to September 26, 2013, the date [plaintiff's] age category changed, [based

Page 5 – OPINION AND ORDER

on plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed." Tr. 568-69; *see also* 20 C.F.R. § 404.1569, (a). However, the ALJ also found that as of September 26, 2013, "the date [plaintiff's] age category changed, [based on plaintiff's] age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that [plaintiff] could perform." Tr. 569; *see also* 20 C.F.R. § 404.1560(c), 404.1566. The ALJ therefore found that plaintiff "was not disabled prior to September 26, 2013, but became disabled on that date and continued to be disabled through the date" of the ALJ's decision. Tr. 569.

## DISCUSSION

Plaintiff raises two assignments of error on appeal. She contends that the Commissioner erred in: (1) improperly rejecting medical opinion evidence; and (2) finding that a significant number of jobs that plaintiff could perform existed in the national economy. The Court addresses each issue in turn.

I.   *Medical Opinion Evidence*

First, plaintiff contends that the Commissioner erred in improperly rejecting the medical opinion of plaintiff's treating physician, Dr. Bergstrom. For the reasons that follow, the Court finds plaintiff's argument is without merit.

In Social Security cases involving denial of DIB, three types of medical opinions exist: those of (1) treating physicians, (2) examining physicians, and (3) reviewing physicians.   *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).

Page 6 – OPINION AND ORDER

"Generally, a treating physician's opinion carries more weight than an examining physician's [opinion], and an examining physician's opinion carries more weight than a reviewing physician's" opinion. *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "where the treating [physician's] opinion is not contradicted by another [physician], it may be rejected only for 'clear and convincing' reasons." *Lester v. Chafer*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). However, if the treating physician's opinion is contradicted by another physician, it may be rejected for "specific and legitimate reasons." *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Regarding an ALJ's specificity, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld. *Towne v. Berryhill*, 717 F.App'x 705, 707 (citing *Batson v. Comm'r of Sec. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).

Regarding an ALJ's legitimate reasoning, an ALJ may reject a medical opinion when the medical opinion is inconsistent with medical records or is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may also reject a medical opinion when it is inconsistent with the plaintiff's level of activity. *Rollins v. Massanari*, 261 F.3d

Page 7 – OPINION AND ORDER

853, 856 (9th Cir. 2001). Finally, "the consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In the end, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of Sec. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See lvlorgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, plaintiff challenges the ALJ's decision to assign "no weight" to plaintiff's treating physician, Dr. Bergstrom. Pl's. Br. at 11; Tr. 563. In March 2016, Dr. Bergstrom responded to an attorney-generated questionnaire related to plaintiff's medical condition, including her functioning prior to the established onset date of March 1, 2015. As the ALJ pointed out, Dr. Bergstorm began treating plaintiff in September of 2011, more than one year after plaintiff's alleged on set date of June 2010. In the March 2015 questionnaire, Dr. Bergstrom explained that plaintiff's depression became worse with worsening neck and back pain, "causing her to stop working in June 2010." Tr. 550. Next, Dr. Bergstrom opined that he did not think plaintiff had "been capable of working since June 2010" due to her conditions. Tr. 551. Finally, Dr. Bergstrom concluded that because plaintiff's constant pain restricted her ability to concentrate on work duties, plaintiff would miss two full workdays or more each month. Tr. 551. After summarizing Dr. Bergstrom's opinion, the ALJ assigned no weight to it and provided several reasons for doing so. Tr. 563-64.

Plaintiff argues that "[t]he reasons the ALJ relied upon for rejecting [Dr. Bergstrom's opinion] were not supported by substantial evidence." Pl.'s Br. at 15. However, the record contains substantial evidence to support several reasons the ALJ provided for rejecting Dr. Bergstrom's opinion. Tr. 563-64. Because Dr. Bergstrom's opinion was contradicted by other physicians, *compare* Tr. 562**,** *with* Tr. 374-75*, and* Tr. 362-64, the ALJ only needed specific and legitimate reasons to reject it, *see Lester*, 81 F.3d at 830-31.

The ALJ provided sufficiently specific and legitimate reasons to reject Dr. Bergstrom's opinion, which are supported by substantial evidence in the record. Throughout his opinion, the ALJ set out a sufficiently detailed and thorough summary of Dr. Bergstrom's opinion and conflicting clinical evidence. Tr. 559-67. The ALJ also provided his interpretation of the medical opinion evidence and his corresponding findings. *Id*. Thus, the ALJ provided more than enough information for the Court to draw reasonable inferences from the record in support of the ALJ's decision. *See Towne*, 717 F.App'x at 707.

For example, the ALJ rejected Dr. Bergstrom's opinion because it does "not comport with the medical evidence record." **Tr. 563**. As the ALJ pointed out, contrary to Dr. Bergstrom's opinion that plaintiff's extreme impairments impeded her from performing even simple work tasks, physical examinations showed the plaintiff: (1) easily walked without difficulty; (2) sat comfortably; (3) had normal gait; (4) no problems with tandem gait, heel/toe, hopping, or squatting; (5) had normal straight leg raise as well as gross and fine motor skills ; and (6) had only mild tenderness to

Page 9 – OPINION AND ORDER

the neck and upper back to palpation. Tr. 561-64. Moreover, mental examinations showed considerably normal findings, including pleasant affect, only mild anxiety, and promising recall abilities. Tr. 564, 374. Because an ALJ may reject a medical opinion if it is inconsistent with medical records or is brief, conclusory, and inadequately supported by clinical findings, *Bray*, 554 F.3d at 1228, the ALJ's specific reasoning is legitimate.

Additionally, the ALJ rejected Dr. Bergstrom's opinion because it does "not comport with [plaintiff's ability to care for foster children and her elderly mother with dementia." Tr. 564, 233. In a function report, plaintiff acknowledged that she cared for a foster daughter as well as her 75-year-old mother, who had dementia, including helping her mother with showers, medication, and meals. Tr. 233. Because an ALJ may reject a medical opinion when it is inconsistent with the plaintiff's level of activity, *Rollins*, 261 F.3d at 856, the ALJ's specific reasoning is legitimate.

In sum, the ALJ's specific and legitimate reasoning is supported by substantial evidence in the record, which the ALJ properly identified in his opinion. Even if plaintiff's arguments offered another rational interpretation of Dr. Bergstrom's opinion, when "evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision," *Batson*, 359 F.3d at 1193. Thus, because the ALJ provided specific and legitimate reasons, which are supported by substantial evidence in the record, for rejecting Dr. Bergstrom's opinion, the ALJ did not commit any harmful error.

/ / /

Page 10 – OPINION AND ORDER

II.   *Step Five of the Sequential Analysis*

Next, plaintiff contends that the Commissioner erred in improperly finding that a significant number of jobs that plaintiff could perform existed in the national economy at step five of the sequential analysis. Pl's. Brief at 8-10.

At step five of the sequential evaluation, the Commissioner must show that the claimant can perform other work that exists in "significant numbers" in the national economy. 42 U.S.C. § 423(d)(2)(A). In terms of what constitutes a significant number of jobs in the national economy, the Act states that "'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In other words, jobs may be significant either nationally or regionally. 20 C.F.R. § 404.1560(c)(1). The Ninth Circuit Court of Appeals clarified that "the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A) ) (emphasis in original). If the court finds "*either* of the two numbers 'significant,' then [it] must uphold the ALJ's decision." *Id.* at 390 (citing 42 U.S.C. § 423(d)(2)(A) ) (emphasis in original).

"There is no bright-line test to determine what constitutes a 'significant number' of jobs in the local or national economy." *Gaston v. Comm'r of Soc. Sec. Admin.*, 577 F.App'x 739, 742 (9th Cir. 2014) (citing *Gutierrez*, 740 F.3d at 528). The Ninth Circuit Court of Appeals previously determined that 135 jobs regionally or

Page 11 – OPINION AND ORDER

1,680 jobs nationally was not significant, *Beltran*, 700 F.3d 390-91, but 2,500 jobs locally in the state of California and 25,000 jobs nationally was significant, *Gutierrez*, 740 F.3d at 527-29; *see also Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon constituted significant work); *Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (1,000 to 1,500 jobs in the local area alone was significant); *Barker v. Sec'y of HHS,* 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs in the Los Angeles/Orange County, California area "within the parameters of 'significant numbers'" found in other cases).

Here, the ALJ found that Plaintiff could perform a significant number of jobs existing in the national economy. Tr. 568. This finding was based on the testimony of the VE, who indicated that a hypothetical individual with plaintiff's age, education, work experience, and residual functional capacity could perform only two occupations: addressor and wafer breaker. Tr. 599. The vocational testified that there were 5,700 addresser jobs and 660 wafer breaker jobs nationally but did not testify as to the regional numbers for these two occupations. *Id.*

While no bright-line test exists to determine what constitutes a significant number of jobs in the national economy, this Court finds that a combined 6.360 jobs between two different occupations in the national economy does not constitute a significant number of jobs. Therefore, the ALJ committed harmful error in improperly finding that a significant number of jobs that plaintiff could perform existed in the national economy. In fact, the Commissioner concedes that a combined 6,360 jobs total do not constitute a significant number of jobs in the national economy.

Page 12 – OPINION AND ORDER

Therefore, the parties do not dispute whether the Commissioner erred at step five of the sequential analysis. Instead, the parties dispute concerns the scope of remand.

III.   *Scope of Remand*

The parties dispute whether this Court should remand the case for further proceedings, or an immediate award of benefits. The Court has discretion under 42 U.S.C. § 405(g) to decide "whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The credit-as-true analysis requires courts to utilize the following sequential evaluation process: (i) determine whether the ALJ made a harmful legal error; (ii) review the whole record to assess whether it is fully developed, free from conflicts and ambiguities, and that all essential factual issues have been resolved; and (iii) determine whether the ALJ would be required to find the plaintiff disabled on remand if the improperly discredited evidence were credited as true. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, because the parties agree that the ALJ committed harmful error in finding that a combined 6,360 jobs total do not constitute a significant number of jobs in the national economy. The Court agrees and finds that this was harmful error. *See Amber O. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 4673221, at *4 (D. Or. Sept. 25, 2019) ("Courts have repeatedly held that occupations for which even more than 6,600 positions are available nationally do not qualify as ones where significant numbers exist.")

Proceeding to the next prong, the government argues that record is not fully developed and that remand to the ALJ is appropriate for a finding regarding how many of those 6,360 jobs were available regionally. Plaintiff argues that the Court need not remand for a determination of regional job numbers as the national numbers are insignificant.

The Act provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he ... cannot ... engage in any other kind of substantial gainful work which exists in the national economy.... For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); id. § 1382c(a)(3)(B).[2]    The Ninth Circuit has held that the statute indicates that the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs).

---

[2] The parties cite to 20 C.F.R. § 404.1560 which similarly provides that "[a]ny other work (jobs) that you can adjust to must exist in significant numbers in the

Page 14 – OPINION AND ORDER

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)) (emphasis in original).

Here, the record contains evidence about the number of jobs in several regions of the country, which the Court has found insignificant. The record lacks information about what jobs exist regionally. Though the Court is highly skeptical that a significant number of the jobs identified by the VE and ALJ will exist in the region where plaintiff lives, the record does not contain the evidence necessary to make that determination. Thus, the record is not complete from the purposes of meeting the second prong the credit as true doctrine.

Plaintiff argues that finding the national number of insignificant is sufficient to award immediate payment of benefits. However, in discussing this statute the Court in *Beltran* canvassed multiple cases and explicitly discussed both the national and regional job numbers in those cases. *Id.* at 389; *see also Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1987) (finding 3,750 to 4,250 regional jobs a significant number of jobs.)

Because the VE did not testify as to how many jobs existed regionally that plaintiff could perform, the second prong of the credit-as-true analysis is not satisfied.[3] To fully develop the record, on remand the ALJ must obtain supplemental VE evidence to clarify how many of the jobs it has identified which plaintiff could

---

national economy (either in the region where you live or in several regions in the country).

[3] Because the second prong of the credit-as-true analysis is not satisfied, this Court need not address the third prong.

Page 15 – OPINION AND ORDER

perform for the relevant period time exist regionally, take any further actions needed to complete the record, and issue a new decision.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

Dated this <u>22nd</u> day of April, 2020.

<u>        /s/Ann Aiken        </u><br>
Ann Aiken<br>
United States District Judge

Page 16 – OPINION AND ORDER